O’Neall, J.
delivered the opinion of the Court.
This case has received from the Court all the consideration, which either its importance to the defendant, or the able and and ingenious argument of the counsel, seemed to require. The result of that consideration it is now my duty to give; and to do so, I shall resolve the various grounds taken for a non-suit, or new trial, into the four following: viz. 1st. That the process under which Murrell was confined, was void: 2d. That the discharge by Dr. Wragg was a good discharge, in law, of the prisoner Murrell; and that his subsequent return to gaol was purely voluntary, and did not authorize the sheriff to detain him in custody against his will: 3d. That the discharge by the justices, under the habeas corpus, was legal, and justified the defendant: 4th. That the damages are excessive.
1st. To establish the first ground, it ought to have been shewn, that the Court of Equity had no jurisdiction of the case in which the process was issued; if this had been done, then the objection must have been fatal. But it is conceded, that the Court had jurisdiction; and the whole force of the objection' is, that the process is not according to the practice of that Court, and not *264 warranted by it. This, I have no doubt, is true; and I have as ]¿tt]e that on a proper application by Murrell, the Court °f Equity would have set it aside. But this not being done, it is a subsisting process of a Court of competent jurisdiction, in a cauge witliiia its jurisdiction. In a Court of law, it must be taken to have been regularly issued, for each Court is the judge of its own proceedings. Both are co-ordinate tribunals, possessing equal powers over the cases, respectively within the jurisdiction of each; and neither have the right to look into, or correct, in point of form, the proceedings of the other.
The sheriff, however, cannot even raise the question of regularity. The rule is stated in Bac. Abr. Escape, A. 1. to be “that wherever a sheriff, or other officer, hath a person in custody, by virtue of an authority from a Court which hath jurisdiction over the matter, the suffering such person to go at large is an escape; for he cannot judge of the validity of the process, or proceedings of such Court, and, therefore, cannot take advantage of any errors in them.” In the “ Compleat Sheriff,”* 308. it is said: “ Another difference is, where the Court hath jurisdiction of the cause, and where not; where the Court hath jurisdiction, and doth mis-award process, this is but error: But if the Court hath not jurisdiction, jmd doth mis-award process, then all is void, and the sheriff may show this in discharge of himself.” It is hence obvious, that a mere irregularity can never avail the sheriff. It is his duty to execute the process, and however irregular it may be, it will justify him in so doing. Bac. Abr. Escape, A. 1. Comp, Shff. 360. If it justifies him in taking and detaining the prisoner, he cannot be allowed to excuse the escape for want of regularity in it. If the process be void, it is no justification; and hence he is allowed to protect himself against an action for escape, by showing it to be so. In other cases, where the defendant is priviledged from arrest, and, notwithstanding the privilege, the sheriff does arrest, and afterwards suffers an escape, the law permits him to show the privilege in his defence; for the plaintiff can have sustained no damage by the escape of a person not liable to arrest. Ray v. Hogeboom, 11 Johns. 433. But in a case where the process is iiregular merely, if the party, against whom it is issued, does not think *265 proper to make the objection, it does not lie in the mouth of third persons to make the objection for him; but it must, in such case, be regarded as legal and valid. If the sheriff could object to the regularity of the process, it would be allowing him, at his own pleasure, to execute it or not; and this capricious power cannot be allowed to the executive officer of the Court.
2d. The second ground presents a mixed question of fact and law. It is said that Dr. Wragg was authorized to order the discharge of Murrell. This is purely a question of fact, and the finding of the jury negatives it. The presiding Judge had the right to advise the jury, that the discharge by Dr. Wragg was wholly unauthorized. This was his opinion of the facts, and if the jury thought with him, they had the right to find accordingly ; if they differed from him, they had an equally undisputed right to find against his opinion. If the Judge had said, that the plaintiff, Harvey, could not have discharged Murrell, then it would have been error in law, and the defendant would have been intitled to a new trial; but as I understand the charge of the Judge, he expressed an opinion to the jury, that the discharge by Wragg was unauthorized by Harvey, and therefore unlawful. In this opinion I agree. The evidence of Wragg’s authority is derived from a conversation between the plaintiff and Mr. Wilkes. If this conversation had taken place after the written agreement, then it would, have been very strong to shew, that Wragg had authority to do whatever Harvey could. But it was before the agreement was entered into, and related unquestionably to the compromise which that paper sets out; and so soon as the parties agreed upon the terms, on which the case was to be settled, and reduced them to writing, the agency of Dr. Wragg ceased. He had performed the office which the plaintiff had assigned to him, by making the arrangement to which both parlies agreed: And I have not been able to discover any thing in the testimony which would authorize me to conclude, that Harvey either expressly or impliedly delegated any other authority to Dr. Wragg. Dr. Wragg, then, had no authority to order the discharge of Murrell, nor had the the sheriff any right to obey such order; and, permitting the prisoner to go at large under it, was a voluntary escape.
The defendant Murrell afterwards returned to gaol, and the plaintiff has elected to charge him again in execution. This " w *266 he had an unquestionable right to do. In the case of Rawson v. Turner, 4 Johns. 472. Mr. Justice Van Ness said, “if a new sheriff regularly receives a prisoner from his predecessor, he is bound to detain him, and is answerable for his escape, although a voluntary escape may have existed in the time of his predecessor.” In the case of James v. Peirce, 2 Lev. 132. the Court held, that notwithstanding the first voluntary escape, when the prisoner was in prison again, he was so far in custody, that the plaintiff had an election, either to take him as now in execution, and to charge the new warden for the last escape, or to admit him out of execution and charge the old warden. See also Bac. Abr. Escape, E. 1. In the “ Compleat Sheriff,” 325, it is said, “if A. be taken on execution at the suit of B., and voluntarily escape by the assent of the sheriff, and after the sheriff retakes him and keeps him in prison, he shall be in execution to B.; because though B. may bring an action against the sheriff on this voluntary escape, yet this is at his election, for the party in execution of his own wrong shall not put B. to his own action against the sheriff against his will, and it may be that the sheriff may not be able to make him recompense.” Murrell, after his voluntary return to gaol, being rightfully in execution to the plaintiff, it was the duty of the sheriff to detain him. This is the general law; but in this case it is further supported by an adjudication in the case of Harvey v. Murrell, on the application by Murrell to Chancellor Desaussure, to be discharged, after his voluntary return. This was refused, and this decision may be regarded as an adjudication by a Court of competent jurisdiction on the legality of his imprisonment; and until set aside or reversed, it must forever conclude Murrell from making the question. If Murrell could not question the legality of his imprisonment, much less can the sheriff.
3d. Justices of the peace and the quorum are, by the habeas corpus act, P. L. 21. authorized to grant the writ of habeas corpus in all cases, where the Judges could under that act. Their authority, however, is derived exclusively from the act, and is confined to the very cases, in which it was intended to afford a remedy. They have no such common law power. The habeas corpus act applies solely to cases, where the prisoner is in confinement for “ criminal, or supposed criminal matter.” It is, therefore, in this case alone that justices of the quorum and thcj *267 peace have the right to grant the writ, and on its return, to bail j. , . 6 r *1, • f v ■* a or discharge the prisoner. In the exercise even or this limited jurisdiction, so many and so great abuses exist as to prevent any one from wishing to see it extended.
The question then, is, whether the prisoner Murrell was confined for any “ criminal, or supposed criminal matter.” In auy point of view, he was not. If the process, under which he was confined, is regarded as an attachment for not performing the decree, it was a civil process. It is in all legal consequences the same as the capias ad satisfaciendum of the Court of law. It is to compel the party to pay the decree; if this is done he is liable to no punishment, and he would have been intitled to be discharged from it under the insolvent debtor’s act. See Exparte Thurmond, decided at Columbia, May, 1830. If the process is regarded as a compound of the properties of the ne exeat, injunction, and attachment, it is still a civil process. For all of them are of that character; and let it be called by whatever name it may, and I confess it is difficult to give it any, it cannot be said to be a criminal process. It does not profess to subject the prisoner to any criminal charge, or punishment; and unless it did, the confinement under it could not be for “ criminal, or supposed criminal matter.”
It is said, however, that the justices were to judge whether the prisoner was confined for “ criminal, or supposed criminal matter;” and having so decided, their decision must be conclusive. This would be, perhaps, true, if they had a general jurisdiction ; but theirs is limited and confined by the law, under which they are authorized to act, to a single class of cases. The moment it appears that their decision was made in a case, of which they had no jurisdiction, their whole proceedings are void; and they themselves would be liable for exceeding their jurisdiction. If it were otherwise, every prisoner confined for debt would only have to apply to justices for a habeas corpus, and upon being brought up before them, move to be discharged. In many cases, the motion would be granted; and if the decision of the justices were to conclude the plaintiff from shewing that it was a civil, and not criminal matter, for which the prisoner whs confined, all distinction between civil and criminal process would be broken down, and all the objects of imprisonment for debt be defeated.
*268 But I will not do the justices the injustice to suppose, that they thought Murrell was confined on criminal process. They were acting under the mistaken belief, that they possessed not only the power of granting a habeas corpus under the statute of Charles the Second, but also the great common law writ of habeas 'corpus ad subjiciendum. The writ was marked “ Per statutum tricessimo primo Caroli secundi Regis, and by the Common Lawand it is plain, that they made the mistake of supposing, that they had a common law jurisdiction, which they had not. Their judgment proceeded upon an erroneous view of their powers; and having exceeded such as the law gave them, was void, and is consequently no justification to the sheriff in discharging the prisoner.
4th. I agree, however, with the presiding Judge, that it was a great excuse to the sheriff, and if the jury had thought proper to give nominal damages, I should not have been disposed to disturb their verdict. Neither am I disposed to disturb it now, when they have given damages to a very large amount, but less thdn the plaintiff’s debt. The plaintiff had made out a case, in which he was intitled to recover something; what that should be, was very properly to be decided by a jury of the vicinage, who were acquainted with the parties and witnesses, and were fully competent to say, to what extent the plaintiff was injured, and how far the defendant should make him compensation. The reason assigned by the presiding Judge, that Murrell died soon after his release, why Harvey should not be intitled to recover more than nominal damages, might in some cases be not only satisfactory, but also conclusive. In this case, however, it is neither. From the testimony, it seems, that while in gaol, Murrell was in possession of a considerable sum of money, probably the greater portion of the proceeds of the sale of his negroes, and that after his release, he gave his friend Capers two thousand dollars, and to another friend, Halfield, some other money and property. If he had not been released, it is probable the plaintiff would, at least, have got the money, which by his release he was enabled to squander. This was a plain and obvious injury, to a considerable amount, resulting from the discharge. The actual amount of the loss may be perhaps greater-or less, than the verdict. But the opinion of the jury is much more likely to be correct, than any we could form; and *269 having by their verdict said, that notwithstanding the matter of ° excuse presented by the sheriff, he should respond in damages; we can neither say that these damages are excessive, or that they are not authorized by the case made by the proof. The motions for a nonsuit, and new trial, are therefore refused.'

 By Hgat. Printed at London in 1698,